**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILLIP ROBBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 5435 |
| | ) | |
| | ) | Judge Ronald A. Guzmán |
| SARAH LOPEZ, the CITY OF BERWYN, and | ) | |
| ROBERT LOVERO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the motions to dismiss by the City of Berwyn and Robert Lovero [17] and Sarah Lopez [32] are granted. Having dismissed the federal claim with prejudice, the Court declines to exercise jurisdiction over the state-law claims, which are dismissed without prejudice. Civil case terminated.

## STATEMENT

**Background**

The Court assumes the truth of the following alleged facts for purposes of the instant motion to dismiss. Plaintiff Phillip Robbin is the owner and operator of Eagle Eye Tree Service, a business that trims and removes trees. Plaintiff was hired by the City of Berwyn (the "City") to remove a tree at 6425 W. 27th Street in Berwyn, Illinois. On Monday, May 2, 2022, prior to beginning work in Berwyn, Plaintiff visited Berwyn's City Hall to find out the instructions for removing the tree and was told that he should attempt to remove the tree through the alley so that he would not block the one-way street. On May 9, 2022, Plaintiff and an assistant, Matthew Byrne, brought equipment to the job site and parked their truck in the alley as instructed. They were in the process of removing the tree when a white car marked "City of Berwyn" with no front license plate pulled up with its horn blaring. A woman, later identified as defendant Sarah Lopez, shouted to Plaintiff to "put that log down and move this truck NOW." Plaintiff responded that he had permission to park in the alley to remove the tree. Lopez allegedly shouted, "I don't care – move that truck!" Plaintiff, who had been in the process of carrying a log to the truck, continued toward the truck to deposit the log. After Plaintiff deposited the log in his truck, Lopez screamed, "your truck can't be here, you have to move!" Plaintiff explained he had the appropriate permits and licenses and was bonded, and Lopez responded by stating, "You need to move this truck, you don't know who you are messing with." When Plaintiff began to walk towards the backyard where he had been working, Lopez screamed, "Don't turn your back

on me, you fucking nigger!" Shouting at the top of her lungs, Lopez exited the car and walked towards Plaintiff, calling him a "fucking nigger" at least three more times. Lopez screamed, "you don't know who you are dealing with, you fucking nigger. I am calling the police." Plaintiff's assistant, the homeowner and his family, and the next-door neighbors witnessed the incident and heard Lopez use the racial slurs.

Lopez backed her car down the alley and pulled off to the side. Subsequently, Berwyn Police Officers Jennifer Stillo and Raul Perez arrived on the scene, with Officer Stillo driving into the alley eastbound and Officer Perez driving into the alley westbound. The officers were responding to a call of a "harassment in progress." Officer Perez approached Plaintiff and positioned him with his back to a fence, demanding his identification. Plaintiff alleges that he was in fear of bodily injury. Meanwhile, Officer Stillo spoke with Lopez, who shouted to Officer Stillo that "he is a liar!" Lopez stated that there had been multiple calls about the alley being blocked. When Officer Stillo said that no one had called the police about the alley, Lopez said that the calls had been to City Hall and were anonymous. When Officer Stillo asked Lopez if she had called Plaintiff a racial slur, Lopez at first denied using any slurs or threats. However, after Officer Stillo spoke with others who witnessed the incident, Lopez admitted that she had "called [Plaintiff] a nigger" and then stated, "I am so sick and tired of these people!" Officer Stillo recorded these statements verbatim in the police report.

Officer Stillo spoke to Plaintiff's assistant, who confirmed that Lopez had started screaming at the top of her lungs for them to move the truck and then started to swear and began to call Plaintiff a "nigger." Officer Stillo also spoke to neighbor Stephanie Flores and her son Mikey Flores, who went to the alley to see what was happening after they heard Lopez screaming. The Floreses confirmed that Lopez was screaming loudly and shouted at Plaintiff, "Fuck you, you fucking nigger" while he was actively loading the tree and could not have moved. Officer Stillo again spoke with Lopez who admitted that she had lied and that there had been no complaints from residents about the truck. Lopez stated that she was a Blight Inspector for the City and that she had been on routine patrol checking for blight at the time of the incident. Officer Stillo approached Plaintiff, who was still being questioned by Officer Perez. Officer Stillo told Officer Perez to return Plaintiff's identification and said, "I am not going to leave a word out" of the police report. Officer Perez's report confirmed the events as reported by Officer Stillo.

Plaintiff immediately went to Berwyn's Police Department to submit a request under the Illinois Freedom of Information Act ("FOIA") for the police report. After not receiving the report, Plaintiff returned to the Berwyn Police Department, where he was told that the "Mayor's office took over the FOIA request." Plaintiff then went to City Hall and met with Berwyn Mayor Robert Lovero, who stated that he was aware of the incident and that the investigation was ongoing. Plaintiff indicated to the mayor that he would like to be informed of the outcome of the investigation; Mayor Lovero instructed Plaintiff to call again in a couple of weeks. In the next few days, Plaintiff and his attorney made several calls to Berwyn's Records Department seeking a response to the FOIA request for the police report. During this period, Berwyn city administrators and the Berwyn Police Department were internally discussing what happened to Plaintiff. On May 12, 2022, the City's FOIA officer sent Plaintiff's request for the police report

2

to a number of people, including the City Attorney and the Chief of the Berwyn Police Department, asking them to "review and respond."

On May 19, 2022, Berwyn Police Department Unit Commander Salvador Gamino emailed the FOIA officer to request an extension, stating the request had been sent to the City Attorney's office for review. On May 26, 2022, the City of Berwyn denied Plaintiff's request for the police report, stating, "Today, City Attorney Anthony Bertuca has advised my office that he will not be releasing the report at this time. He is denying your request." No reason for the denial was given.

Plaintiff then scheduled a second meeting with Mayor Lovero, at which Plaintiff was accompanied by his attorney. When Plaintiff and his lawyer asked for the police report, the mayor stated that it was "here somewhere" on his desk but he could not find it. The mayor's assistant walked in and out of the office, appearing to search for the report. The mayor then told Plaintiff that he knew the "the City worker" personally and "she works for us." The mayor further told Plaintiff and his attorney that there were "two sides to every story," that "you said some things too," and that Plaintiff's "paperwork was not in order." Plaintiff corrected the mayor and confirmed that he had complied with the requirements to work in Berwyn. Mayor Lovero stated that he could not disclose the city worker's name, but that he had given her a verbal reprimand. He then stated that "she will not be terminated. That is the end of the investigation of this incident."

Later that evening, the mayor's office sent Plaintiff's attorney a report naming Lopez as the aggressor. A few days later, Plaintiff's attorney contacted Berwyn's City Attorney Anthony Bertuca and asked him to investigate the matter. Bertuca said he would talk to the mayor and asked Plaintiff's attorney what he was looking for. Plaintiff's attorney replied, "Justice–and a verbal reprimand isn't justice." Hearing nothing for several days, Plaintiff's attorney again called Bertuca, who stated that "the mayor offered you an apology so that's all we are going to do."

On June 7, 2022, Plaintiff and his attorney went to the Berwyn Police Department to report the incident as a hate crime and were told to come back later to talk to Unit Commander Fellows. Plaintiff and his attorney returned on June 8, 2022, when they met with two detectives who stated they were "not part of any political machine" and would investigate. A week later, Commander Fellows called Plaintiff's attorney and indicated that the investigation was complete. According to Commander Fellows, some of the witnesses had "changed their stories" and stated that Lopez had been walking away from Plaintiff and was speaking "under her breath" when uttering the slurs. For these reasons, Commander Fellows indicated that they would not be charging Lopez with a hate crime. Plaintiff alleges on information and belief that no witnesses' stories changed.

Plaintiff and his attorney next went to the Cook County Sheriff's office in Maywood, Illinois and asked them to open an investigation. Plaintiff and his attorney met with two plainclothes detectives who refused to take Plaintiff's statement and indicated that to begin an investigation, the Berwyn Police Chief would have to "self-report a conflict." The detectives stated that "Berwyn had its investigation, and we can't step on their toes."

On July 19, 2022, Plaintiff and his attorney were interviewed by the local CBS news affiliate. After the story aired, on July 21, 2022, Berwyn activists organized a press conference in front of Berwyn City Hall and invited additional media coverage. Just before the press conference was to begin, Plaintiff's attorney went to City Attorney Bertuca's office and asked if the City was going to fire Lopez. Bertuca said he had no authority to do anything and that he could not get in touch with Mayor Lovero because he was out of the country. City Hall employees then locked the doors of City Hall. Plaintiff, his attorney, and several Berwyn activists spoke at the press conference and demanded that Lopez be fired from her job and that Berwyn make changes to address systemic racism. No one from the City of Berwyn appeared at the press conference.

On July 26, 2022, at a Berwyn City Council meeting, many Black residents and supporters spoke about the incident and about racism in Berwyn, again asking the mayor and aldermen to fire Lopez and make changes to the City's policies to address systemic racism. On July 30, 2022, Lopez emailed Mayor Lovero and City Administrator Ruth Siaba Green, stating that she was resigning. On August 1, 2022, Mayor Lovero issued a written statement that Lopez had been performing her work as a Blight Inspector when the incident happened and that she had been terminated after a "full investigation." At no time did anyone from the City of Berwyn interview Plaintiff as part of an investigation into the incident.

On August 5, 2022, the City of Berwyn's only Black alderman, Joseph Carmichael, requested that the City Council ask the City's Ethics Commission to investigate the delay in terminating Lopez, stating that "the timeline on which it occurred calls into question whether this firing was the rational ending to a bureaucratic process or instead a reactionary response, after months of inaction, to the incident making its way into the public eye." The request was passed by the Berwyn City Council. On September 27, 2022, City Attorney Bertuca, who is also Berwyn's Ethics Advisor, stated in a letter addressed to Mayor Lovero that the request was "insufficient to allege a violation" of the City's Ethics Ordinance and that the matter was closed.

On October 4, 2022, Plaintiff filed this lawsuit against Lopez, the City of Berwyn, and Mayor Lovero alleging a substantive due process claim under § 1983; a claim under the Illinois Hate Crime statute, 720 ILCS 5/12-7.1; a claim for intentional infliction of emotional distress; and an indemnification count against the City of Berwyn. Defendants move to dismiss all claims.

**Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

**Analysis**

To allege a viable substantive due process claim, Plaintiff "would need to allege conduct under color of state law that 'violated a fundamental right or liberty' and was so 'arbitrary and irrational' as to 'shock the conscience.'" *Nelson v. City of Chi.*, 992 F.3d 599, 604 (7th Cir. 2021) (citations omitted). Defendants contend, among other things, that Plaintiff has done neither. "Substantive due process protects only those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and must be subject to 'careful description.'" *Id*. (citations and certain internal quotation marks omitted). Indeed, the Supreme Court has stated that courts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation omitted).

Plaintiff asserts that his liberty interests were violated because he has due process rights to go "about his business with dignity and autonomy," carry out his trade "unmolested," travel "locally through public spaces," and be "free of harassment and race-based attacks (including having the police called on him and having the police misrepresent facts and refuse to act when he sought to press charges against Lopez)." In support, Plaintiff cites to two Supreme Court cases. First, Plaintiff refers to *Obergefell v. Hodges*, 576 U.S. 644 (2015), in which the Supreme Court recognized the fundamental liberty interest in same-sex marriage, noting that the "fundamental liberties protected by [the Due Process Clause] include most of the rights enumerated in the Bill of Rights. . . . [and] th[o]se liberties extend[ing] to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *Id*. at 663. In addition, Plaintiff cites to *Aptheker v. Secretary of State*, 378 U.S. 500 (1964), in which the plaintiffs challenged the constitutionality of one section of the Subversive Activities Control Act, pursuant to which the government sought to revoke the plaintiffs' passports. The *Aptheker* concurrence stated that "[f]reedom of movement, at home and abroad, is important for job and business opportunities—for cultural, political, and social activities—for all the commingling which gregarious man enjoys." *Id.* at 519-520. (Douglas, J., concurring). Plaintiff further notes that the Seventh Circuit has stated that the liberty interests the Due Process Clause protects "'include[] more than the absence of physical restraint.'" (Pl.'s Resp., Dkt. # 28, at 4) (citing *Khan v. Gallitano*, 180 F.3d 829, 833 (7th Cir. 1999)).

Notably, the Supreme Court has expressly indicated that fundamental liberties must be subject to "careful description." Neither Plaintiff's right to engage in same-sex marriage nor his right to travel abroad are implicated in this case, and Plaintiff cites to no cases in which the liberties he identified (i.e., to go "about his business with dignity and autonomy," carry out his trade "unmolested," travel "locally through public spaces," and be "free of harassment and race-based attacks (including having the police called on him and having the police misrepresent facts and refuse to act when he sought to press charges against Lopez)") have been acknowledged as ones protected by the Due Process Clause. With respect to the allegations against Lopez, while the Court finds her alleged comments to be abhorrent, Plaintiff points to no cases in which the liberty interest in working while being free from purported harassment and race-based verbal attacks is recognized as fundamental such that it can form the basis of a substantive due process claim. Similarly, Plaintiff makes little effort to establish that Mayor Lovero or the City deprived Plaintiff of a fundamental liberty interest. In a parenthetical, Plaintiff asserts that he has a fundamental liberty interest in not "having the police misrepresent facts and refuse to act when

he sought to press charges against Lopez." Again, however, as already discussed, Plaintiff fails to cite to any authority indicating, with "careful description," that he has a fundamental liberty interest in either of these things. Plaintiff's simple reference to the Seventh Circuit's observation that an alleged liberty interest can be "more than the absence of physical restraint" is insufficient to support the purported liberty interests he is asserting.

Even if Plaintiff had identified a fundamental liberty interest regarding his interactions with either Lopez or the City and Mayor Lovero, the conduct alleged against Lopez was not so arbitrary and irrational as to shock the conscience. *See Nelson*, 992 F.3d at 604. "[T]he scope of such [substantive due process] claims [against state actors] is *extremely narrow*, and '[c]ases abound in which the government action—though thoroughly disapproved of—was found not to shock the conscience.'" *Catinella v. Cnty. of Cook*, 230 F. Supp. 3d 880, 887 (N.D. Ill. 2016) (emphasis added). Plaintiff points to no cases in which the Seventh Circuit has held that racist remarks satisfy the "shock the conscience" standard, and a district court in Florida recently noted:

> . . . [T]here are *no cases* espousing the Plaintiffs' position that racial slurs alone can "shock the conscience" (at least not in a constitutional sense). To the contrary, the Eleventh Circuit has time and again made clear that only a very narrow range of governmental conduct will "shock the conscience"—a list that, for instance, doesn't even include a state-employed college professor's violent and intentional battery against a student or a firefighter's sexual assault of an apprentice. *See, e.g.*, *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1049 (11th Cir. 2002) (holding that a college professor's intentional physical misconduct— *viz.*, shoving a female student in the face and then slamming a door on her arm with so much force that the glass in the door panel shattered— didn't "shock the conscience" and thus didn't violate the plaintiff's right to substantive due process); *Skinner v. City of Miami*, 62 F.3d 344, 346 (11th Cir. 2006) (holding that stripping an apprentice firefighter naked, threatening to rape him, handcuffing him, and sexually assaulting him as part of a hazing ritual didn't "shock the conscience" and thus didn't violate the plaintiff's right to substantive due process); *accord Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 922 (8th Cir. 2001) (holding that a band teacher's verbal abuse against a student—which included saying that "[the plaintiff[ could no longer play in the band because she was too stupid"—was "singularly unprofessional," but did not "raise a genuine issue of material fact on whether his behavior was sufficiently shocking to the conscience"); *Koorn v. Lacey Twp.*, 78 F. App'x 199, 203 (3d Cir. 2003) (finding that the "Mayor and Committeeman's alleged racist remarks . . . had no direct, legal effect on the [plaintiff's] property rights . . . . Certainly they had no legal effect on a requisite fundamental right."); *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1257-58 (10th Cir. 1996) ("We are unwilling to hold that actions which inflict only psychological damage may never achieve the high level of brutal and inhuman abuse of official power literally shocking to the conscience,"

but finding that a teacher who repeatedly—and over a month-and-a-half—called a twelve-year-old student a prostitute in front of the whole class didn't "shock the conscience").

Indeed, the only two published decisions in which the Eleventh Circuit *has ever* found that a defendant's conduct "shocked the conscience" involved violent and intentional physical assaults by teachers against children.

*625 Fusion, LLC v. City of Fort Lauderdale*, 595 F. Supp. 3d 1228, 1269 (S.D. Fla. 2022) (emphasis in original). Nor does the Court find that Plaintiff's being denied a FOIA request, the police having been called during the interaction with Lopez, or the police and/or mayor purportedly misrepresenting facts and refusing to act when Plaintiff sought to press charges against a city worker suffice to "shock the conscience" as that term is used in the substantive due process context.

**Conclusion**

For the reasons stated above, the motions to dismiss by the City of Berwyn and Robert Lovero and Sarah Lopez are granted. Having dismissed the federal claim with prejudice, the Court, in its discretion, declines to exercise jurisdiction over the state-law claims, which are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Lavite v. Dunstan*, 932 F.3d 1020, 1034 (7th Cir. 2019) ("The district court was well within its discretion in declining to exercise supplemental jurisdiction after it dismissed all claims over which it had original jurisdiction.").

**Date**: April 24, 2023

**Ronald A. Guzmán**
**United States District Judge**